## APPEAL OF CONEY & PARKER CO.

Docket No. 1053.  Submitted March 17, 1925.  Decided September 7, 1925.

*Charles W. Saussy*, *C. P. A.*, for the taxpayer.
*Willis D. Nance*, *Esq.*, for the Commissioner.

Before IVINS and KORNER.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the period from January 1, 1918, to April 30, 1918, and the fiscal years ending April 30, 1919, 1920, and 1921, in the aggregate amount of $4,654.56.

The questions raised related to a loss on the exchange of securities, deductions for bad debts, and a contribution which was claimed to be an ordinary and necessary business expense.

### FINDINGS OF FACT.

The taxpayer is a corporation, organized under the laws of Georgia in 1907, to succeed the partnership composed of Edgar F. Coney and William F. Parker. It was engaged in the business of selling coal and wood at wholesale and retail.

The taxpayer acquired from the partnership, together with other assets, 44 shares of stock in the Brunswick & Florida Steamboat Co. which owned the steamer *Emmeline*. On April 3, 1918, the St. Simons Transit Co. voted to increase its stock from 200 to 250 shares and to issue the 50 new shares to the stockholders of the Brunswick & Florida Steamboat Co. in the ratio of 1 share for every 6 shares of Steamboat Company stock held, in exchange for all of the assets and liabilities of the Steamboat Company, including the steamer *Emmeline* and its belongings. The Transit Company further agreed to pay $15 a share to any stockholders who preferred cash instead of stock. Stock in each company had a par value of $100 per share. The transaction was carried through.

The taxpayer carried the 44 shares of Steamboat Company stock upon its books at $2,200. It elected to receive seven and one-third shares in the Transit Company in exchange for its 44 shares in the Steamboat Company, rather than $660 in cash. In the taxable period ending April 30, 1918, the taxpayer determined a value of seven and one-third shares in the amount of $800 and charged off $1,400 as a loss sustained within that period.

During the fiscal year ending April 30, 1919, the taxpayer made a contribution of $1,000 toward a fund then being raised to assist in purchasing and donating to the Federal Government land upon which there was to be, and subsequently was erected by the United States, a picric-acid plant. The plant was operated for a time but the enterprise was abandoned by the Government after November 11, 1918.

During the period from October, 1912, to January, 1913, the taxpayer received 10 promissory notes totaling $9,285.80, in which the taxpayer was named as the payee and the maker was "Dredge 'Niagara,' by J. C. Titzell, owner." The notes were given to the taxpayer as security for payment for fuel supplied to the dredge. Titzell personally endorsed each of the notes. The taxpayer discounted them at banks. Titzell subsequently reduced the liability to $6,085.27, but no payments were made on the notes after March 31, 1913. Efforts to locate Titzell in order to collect the balance from him were unsuccessful. The taxpayer wrote off $2,000 of the indebtedness in the year 1920, as worthless and uncollectible and the balance was written off in subsequent years.

The taxpayer was incorporated in July, 1907. Under date of December 7, 1907, certain individuals named MacRae and Chase, being tenants in common by way of an assignment of a one-fourth interest in a certain United States patent issued to one Pritchard August 9, 1906, granted an exclusive license to practice and use the invention within the State of Georgia to "T. Harry Flowers, H. T. Kennon, and the firm of E. F. Coney and W. F. Parker," and their assigns. The interests so granted were one-sixth to Flowers, two-sixths to Kennon, and three-sixths to the "firm of E. F. Coney and W. F. Parker." The patent related to a process for the distillation of turpentine and rosin from wood. During the years from 1907 to 1918, the taxpayer advanced or expended the total sum of $7,-786.19, for the exploitation of the process. In 1920 the project was abandoned and the plant was scrapped. The taxpayer carried the amount of $7,786.19 in accounts receivable upon its books and in 1920 charged off $2,000 of the account as a bad debt.

The Commissioner disallowed the above-mentioned deductions.

DECISION.

The determination of the Commissioner is approved.

On reference to the Board, ARUNDELL took no part in the consideration.